**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Armand Andreozzi,

                Plaintiff,

v.

Unknown Ricotta, et al.,

                Defendants.

No.  CV 18-02400-PHX-DGC (JZB)

**ORDER**

    Plaintiff Armand Andreozzi, who is currently confined in the United States Penitentiary in Marion, Illinois, brought this civil rights action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Defendants Dr. Salvatore Ricotta and Ian Connors move to dismiss, or in the alternative for summary judgment.  (Doc. 31.)  Plaintiff was informed of his rights and obligations to respond (Doc. 27, 33), and he failed to do so.  The Court will grant the Motion for Summary Judgment, deny the Motion to Dismiss as moot, and terminate this action.[1]

---

[1] Plaintiff was informed of his rights and the obligations of a response to a motion to dismiss on April 16, 2019 (Doc. 33), and he failed to timely respond to Defendants' Motion.  The Court subsequently issued an order pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), informing Plaintiff of his rights and the obligations of a response to a motion for summary judgment (Doc. 37), and Plaintiff again failed to timely respond.  Since then, Plaintiff twice moved for extensions of time to respond (Docs. 38, 40), and both times the Court granted him additional time (Docs. 39, 41).  The last time, the Court gave him until November 8, 2019 to respond to both the Motion to Dismiss and the Motion for Summary Judgment and informed him that no further extensions would be granted barring extraordinary circumstances.  (Doc. 41 at 2.)  Plaintiff once again failed to respond.

## I.    Background

On screening of Plaintiff's six-count Complaint under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment medical care claims against Defendants Ricotta, Asberry, Smith 1, Briggs, Ackley, Tracy, Mitchell, and Connors in Count One based on their alleged failures to treat his neuroma, and against Defendants Ricotta, Asberry, Tracy, Mitchell, and Connors in Count Two based on their alleged failures to treat his reflux esophagitis, and directed these Defendants to answer these claims. (Doc. 10.) The Court dismissed the remaining claims and Defendants. (*Id.*) The Court subsequently dismissed Defendants Asberry, Smith 1, Briggs, Ackley, Tracy, and Mitchell without prejudice for failure to serve pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. (Doc. 36.) The remaining claims are Plaintiff's Eighth Amendment medical care claims against Ricotta and Connors arising from Plaintiff's neuroma in Count One and from his reflux esophagitis in Count Two.

## II.    Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th

Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Facts[2]

In 2002, Plaintiff was diagnosed with reflux esophagitis, for which he has been prescribed Ranitidine, Aciphex, and Omeprazole. (Doc. 1 at 16.) He has also been diagnosed with bilateral Morton's neuroma, a condition that causes numbness in his toes and pain in the balls of his feet, and requires him to wear orthotics. (*Id.* at 9−13.)

In November 2015, Plaintiff was transferred from the Federal Correctional Institution (FCI) in McKean, Pennsylvania, to the FCI Phoenix in Phoenix, Arizona. (*Id.* at 9; Doc. 32 (Defs. Statement of Facts) ¶ 2.) From November 2003 to February 28, 2019, Defendant Ricotta worked as a physician at FCI Phoenix. (*Id.* ¶ 1.)

On November 19, 2015, Plaintiff saw Dr. Ricotta at the FCI Phoenix Health Services Clinic for a new transfer evaluation. (*Id.* ¶ 3.) Plaintiff complained of migraine headaches that he described as pounding pain in the frontal location. (*Id.* ¶ 4.) He did not

_____

[2] The facts are taken in part from Defendants' Statement of Facts, which is undisputed. Because Plaintiff did not file a Response, the Court also relied on his verified Complaint to set forth relevant facts, to the extent those facts are based on Plaintiff's personal knowledge. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (allegations in a pro se plaintiff's verified pleadings must be considered as evidence in opposition to summary judgment); *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence).

complain of Morton's neuroma or any other adverse symptoms. (*Id.*) He also reported that he had Spenco 3/4 length orthotic inserts, shoe size eleven, which had been discarded, and that, prior to his transfer from FCI McKean, a new pair of orthotics had been ordered. (*Id.* ¶ 5.) Ricotta updated Plaintiff's approved Devices and Equipment list, which included two pairs of custom-made 3/4 length orthotics from home and one pair of Spenco OTS orthotics from the Bureau of Prisons (BOP). (*Id.* ¶ 6.)

Plaintiff also reported that he was taking Omeprazole for acid reflux, which he stated had been diagnosed and documented for over 13 years, and he informed Ricotta that he had been enrolled in the Gastrointestinal Care Clinic (GI CC). (*Id.* ¶ 7; Doc. 1 at 16.) Ricotta told Plaintiff that Omeprazole is available over the counter without a prescription and can be purchased at the prison commissary. (Doc. 32 ¶¶ 13−14.) He also informed Plaintiff that if he were ever indigent, Omeprazole would be available at no cost through the pharmacy. (*Id.* ¶ 15.)

According to Ricotta, there was no record at the time that Plaintiff had an upper endoscopy indicating reflux esophagitis, and Plaintiff's stool test for H. Pylori was negative, indicating he did not have H. Pylori stomach infection. (*Id.* ¶¶ 8−9.)[3] The GI CC provides short-term treatment for patients with H. Pylori infections and long-term treatment for patients with a history of gastric bypass surgery, peptic ulcer disease, or bleeding ulcers, long-term steroid use, Schatzki's Ring, Zollenger-Ellison Syndrome,

---

[3] Ricotta also states in his declaration that "an upper endoscopy later performed while [Plaintiff] was at FCI Phoenix revealed normal mucosa with no inflammatory changes." (Doc. 32, Ex. A ¶ 9.) Ricotta does not cite to, and Defendants do not provide, Plaintiff's underlying medical records to support any of Ricotta's asserted facts about Plaintiff's medical care. Where the asserted facts stem from Ricotta's personal examinations of Plaintiff, and they are not disputed, the Court has included those facts. *Taylor v. List*, 880 F.2d 1040, 1045 n. 3; Fed. R. Civ. P. 56(c)(4) (declaration used to support summary judgment motion must be made on personal knowledge). But Ricotta's bare assertion that a medical test was "later performed" is not enough to demonstrate that Ricotta had personal knowledge of this test or its results. Consequently, absent proper documentation, Defendants may not rely on these facts. *See Sapiano v. Millennium Entm't, LLC*, CV 12-8122 PSG (MAN), 2013 WL 11120262, at *4 (C.D. Cal. Nov. 14, 2013) ("when a party refers to documentary evidence as the source of a factual allegation in an affidavit or declaration, the party must attach the relevant documents to the affidavit or declaration"); *see also Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1261 (9th Cir. 1993) (upholding the district court's exclusion of affidavits that failed to attached contract documents that were referred to within the affidavits).

Barrett's Esophagus, or objective findings of reflux esophagitis. (*Id.* ¶ 11.) According to Ricotta, Plaintiff did not meet any of the criteria for enrollment in the GI CC. (*Id.* ¶ 12.) Plaintiff alleges that Ricotta did not examine him for the GI CC, and Ricotta "refused to review [Plaintiff's] records." (Doc. 1 at 16, 18.)

Ricotta gave Plaintiff a 30-day prescription for Omeprazole, which meant Plaintiff would have Omeprazole for 30 days at no cost without having to show he was indigent. (*Id.* ¶ 16.) A 14-day supply of Omeprazole costs $19.50. (*Id.* ¶ 24.) At the time, Plaintiff had $1,530.00 in his inmate trust account. (*Id.* ¶ 20.) In February 2016, he had a $1,300.00 check withdrawn, and his trust account balance went down to $5.53, but he continued to receive monthly deposits to this account, and by March 11, 2016, his balance had increased to $42.18. (*Id.* ¶ 23.) According to transaction records, Plaintiff made numerous purchases from his account, but he never purchased Omeprazole from the prison commissary during his time at FCI Phoenix. (*Id.* ¶ 24.)

On November 29, 2015, Plaintiff "followed up on orthotics by institutional e-mail to Ricotta." (Doc. 1 at 9.) Plaintiff stated that he was due for a new pair of 3/4 length arch supports because prison staff at his prior location, FCI McKean, had thrown out an old pair prior to Plaintiff's transfer to FCI Phoenix. He wrote: "I now only have my last pair of personal arch supports which are very old. These supports are in my property which I have found out has not even been shipped from McKean as of 25 November 2015." (Doc. 32, Ex. A ¶ 19.) Plaintiff did not complain of foot pain or numbness, and Ricotta did not consider his request urgent or emergent because, based on Ricotta's prior institutional experience, Ricotta expected that Plaintiff would receive his custom orthotics in a short time, and Plaintiff was not complaining of pain or numbness. (*Id.* ¶¶ 28−29.)

According to Plaintiff, Ricotta's response to the November 29, 2015 email only addressed Plaintiff's medication, not orthotics, and on December 22, 2015, Plaintiff sent another email to Ricotta requesting orthotics, but did not receive a response. (Doc. 1 at 9; Doc. 32, Ex. A ¶ 22.)[4] Ricotta testifies that Plaintiff's second email did not mention

_____

[4] Defendants date this email December 22, 2016, not 2015. (Doc. 32 ¶ 22.) But

orthotics or complain about foot pain or numbness; instead, he requested a prescription for Omeprazole.  (*Id.* ¶ 30.)[5]  After this, Ricotta did not receive any other emails from Plaintiff.  (*Id.* ¶ 31.)  Ricotta's only subsequent involvement with Plaintiff was in his role as Clinical Director at FCI Phoenix, which involved reviewing and co-signing medical records, approving consult requests, and initiating medical holds.  (*Id.* ¶ 26.)

On January 13, 2016, Plaintiff went to sick call, reporting that his GI condition had worsened, and he was in severe pain.  (Doc. 1 at 16.)  He requested a new prescription and a referral to a GI specialist, but no action was taken on these requests.  (*Id.*)[6]

On January 15, 2016, Ricotta reviewed and co-signed a note by Family Nurse Practitioner (FNP) Enesima Briggs, who had seen Plaintiff on January 14, 2016, at which time Plaintiff requested an orthopedic consult to have orthotics and FNP Briggs instructed him to follow up with the Chronic Care Clinic.  (Doc. 32 ¶ 33.)

On January 19, 2016, Plaintiff filed a BP-8 grievance, complaining that he was denied medication, and on January 21, 2016, he received a response from dismissed defendant Asberry, stating that Ricotta had discontinued him from GI CC because "acid reflux as the lone diagnosis does not meet the criteria for a GI CC."  (Doc. 1 at 16.)  Asberry further stated: "You are encouraged to report to sick call if you require further evaluation for your condition[s] or if your condition[s] has worsened," even though Plaintiff had already been to sick call asking for treatment.  (*Id.*)

On March 4, 2016, Plaintiff's Devices and Equipment list was updated to indicate he had been issued new Spenco Rx Orthotic arch supports, full length size 10-11, for medium to high arches.  (Doc. 32 ¶ 34.)

On March 16, 2016, Ricotta reviewed and co-signed a note by FNP Briggs, who had seen Plaintiff in the Health Services Clinic on March 15, 2016.  (*Id.* ¶ 35.)  According to

---

Ricotta's declaration testimony, upon which Defendants rely, dates subsequent events as occurring in 2015, suggesting that the December 22, 2015 date Plaintiff alleges is correct.  (*See* Doc. 32, Ex. A (Ricotta Decl.) ¶¶ 22−29.)

[5] Defendants do not show that Ricotta ever responded to this email.

[6] Plaintiff does not state who he saw at this visit.

the note, Plaintiff requested new orthotics because his existing orthotics were worn out. (*Id.*) He also complained that the in-house insoles he had been given were putting pressure on the nerves in his leg, causing him inflammation, but he denied pain. (*Id.*) Ricotta referred Plaintiff's consult request to the Utilization Review Committee for approval. (*Id.* ¶ 36.) Later, on April 5, 2016, Ricotta approved the consult request on behalf of the Utilization Review Committee, calling for Plaintiff to be seen by an outside specialist and evaluated for orthotics. (*Id.* ¶ 37.) Scheduling was performed by an outside contractor on a non-urgent basis, and Plaintiff received his consult on June 15, 2016. (*Id.* ¶¶ 37−38.)

On September 8, 2016, Ricotta reviewed and approved an August 22, 2016 consult request for Plaintiff to receive a final fitting for custom orthotics that had been ordered for him, and the consult was again scheduled by an outside contractor. (*Id.* ¶ 39.)

On October 24, 2016, Ricotta learned that Plaintiff was to be transferred, and he initiated a medical hold so that Plaintiff would not be transferred before his final orthotic fitting. (*Id.* ¶ 40.) Because Morton's neuroma does not meet the criteria for a serious, life-threatening condition, the administrative transfer took precedence over Ricotta's medical hold, and Plaintiff was transferred to the U.S. Penitentiary in Marion, Illinois, without receiving his final orthotic fitting. (*Id.* ¶¶ 41−42.)

Ricotta was not aware of or involved in responding to any administrative remedies submitted by Plaintiff related to his medical care. (*Id.* ¶ 44.)

Since May 17, 2015, Defendant Ian Connors has been the National Inmate Appeals Administrator, working at the BOP central office in Washington, D.C. (*Id.* ¶¶ 45, 47.) In this role, Connors oversees the Administrative Remedy Section of the Office of General Counsel, which processes, investigates, and responds to inmate remedy appeals at the central office level. (*Id.* ¶ 46.)

On July 18, 2016, Connors denied Plaintiff's Administrative Remedy Appeal, wherein Plaintiff alleged that he was removed from the GI CC and denied medication for his worsening GI issues. (*Id.* ¶ 48.) Based on his review of the documentation, Connors found no evidence that Plaintiff was not receiving appropriate treatment for his condition

and there was insufficient diagnostic data to show that Plaintiff required enrollment in the GI CC. (*Id.*)

On September 13, 2016, Connors denied Plaintiff's Administrative Remedy Appeal, wherein Plaintiff alleged deliberate indifference to his medical needs and requests for an orthopedic consult and orthotics. (*Id.* ¶ 49.) Based on his review of the documentation, Connors found that Plaintiff had been evaluated by an orthotic specialist who recommended foot orthotics on June 15, 2016, and Plaintiff would be scheduled for a final fitting in the near future; therefore, there was no evidence of deliberate indifference to these medical needs. (*Id.*)

## IV. Discussion

To prevail on an Eighth Amendment medical care claim, a prisoner must demonstrate that a defendant acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective prong and a subjective prong. First, as to the objective prong, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60.

Second, as to the subjective prong, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; to satisfy the knowledge component, the official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted), or when they fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Finally, even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

### A. Count One

Defendants do not dispute, and thereby concede, that Plaintiff had Morton's neuroma as alleged in Count One and that this was a serious medical need. The analysis therefore turns on the second prong of Eighth Amendment analysis – whether Defendants knew of and were deliberately indifferent to this need.

Where there are several defendants who allegedly acted with deliberate indifference, the Court must take an individualized approach that accounts for the duties, discretion, and means of each defendant. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). The Court must look at "whether [each] individual defendant was in a position to take steps to avert the [harm] but failed to do so intentionally or with deliberate indifference." *Id.*

### 1. Defendant Ricotta

Defendants argue that Defendant Ricotta was not deliberately indifferent to Plaintiff's neuroma when he saw Plaintiff at the Health Services Clinic on November 19, 2015, because Plaintiff did not complain of foot pain or any other neuroma-related symptoms. (Doc. 31 at 9.) They further argue that Ricotta was not deliberately indifferent in failing to provide orthotics in response to Plaintiff's November 29, 2015 and December 22, 2015 emails because, once again, Plaintiff did not complain of pain, and Ricotta reasonably believed, based on his institutional experience, that Plaintiff would soon have his orthotics. (*Id.* at 10.) They argue that there is also no evidence Plaintiff suffered harm from the delay in receiving orthotics, and a mere delay does not amount to deliberate indifference. (*Id.*) *See Shapley*, 766 F.2d at 407.

Defendants have met their initial burden of showing that Ricotta was not deliberately indifferent to Plaintiff's neuroma during his first and only medical encounter with Plaintiff on November 19, 2015. As they point out, there is no evidence that Plaintiff complained of pain or other neuroma-related symptoms at that visit. And, absent such evidence, Plaintiff cannot show that Ricotta both knew of and disregarded a substantial threat to Plaintiff's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff's allegations about this encounter in the Complaint are too vague to create a genuine issue of material fact that Plaintiff told Ricotta he had neuroma or was experiencing any neuroma-related symptoms that needed to be addressed. Plaintiff alleges only that he told Ricotta that "prior to [his] transfer from FCI McKean, PA, a new pair of orthotics had been ordered." (Doc. 1 at 9.) Combined with Ricotta's more specific testimony that Plaintiff reported using Spenco 3/4 length orthotic inserts that had been

discarded and that a new pair had been ordered for him prior to transfer, it is ambiguous whether Plaintiff had any usable orthotics at that time or whether the new ones on order would be sent to him at FCI Phoenix. But even if Plaintiff did not have usable orthotics, absent a showing that he made Ricotta aware that he was in pain or otherwise had an immediate need for new orthotics, Ricotta's failure to do more than simply update Plaintiff's approved equipment list did not rise to the level of deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 105 (the indifference must be substantial; the action must rise to a level of "unnecessary and wanton infliction of pain").

This same analysis applies to Plaintiff's emails, for which there is also no evidence that Plaintiff complained of pain or any other neuroma-related symptoms. It undisputed that Plaintiff stated in his first email that he had arch supports "in [his] property" which had not yet shipped from FCI McKean. (Doc. 32, Ex. A ¶ 19.) Even though it is unclear from the available evidence which orthotics had allegedly been thrown out, which were "in [Plaintiff's] property" at FCI McKean, and which—if any—were still on order (*see* Doc. 1 at 9; Doc. 32, Ex. A ¶ 19), Ricotta could have reasonably concluded from Plaintiff's statements and Ricotta's institutional experience that Plaintiff would be receiving his custom orthotics from FCI McKean "in a short time." (Doc. 32, Ex. A ¶ 19.) Absent any controverting evidence showing that Ricotta knew that this was not the case or that a short delay without his orthotics would cause Plaintiff serious harm, Ricotta's failure to address Plaintiff's need for orthotics at that time does not show deliberate indifference to a serious medical need. To satisfy the knowledge component of deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Defendants also argue that there is no evidence Ricotta was deliberately indifferent to Plaintiff's ongoing requests for custom orthotics because Ricotta was not personally involved in Plaintiff's medical care after December 2015, and there is no evidence that, in his limited role as Clinical Director, Ricotta disregarded a serious medical need for Plaintiff

to receive new orthotics. (*Id.* at 11.) Defendants point out that when Ricotta first became aware from reviewing and co-signing FNP Briggs' March 16, 2016 note that Plaintiff complained about his new BOP-issued insoles, Ricotta forwarded an orthopedic consult request to the Utilization Review Committee the very next day and then approved the request on behalf of the Committee on April 5, 2016. (*Id.* at 11−12.) After Plaintiff's new orthotics were ordered, Ricotta approved an August 22, 2016 consult request for Plaintiff to have a final fitting, and he initiated a medical hold for Plaintiff not to be transferred before this fitting took place. (*Id.* at 12.) Even though the transfer occurred despite this hold, Defendants argue that Ricotta did not show deliberate indifference because he attempted to have the transfer delayed, and Plaintiff was still authorized to use his existing orthotics. (*Id.* at 12−13.)

These facts are sufficient to make an initial showing that, in his limited actions as Clinical Director, Ricotta was not deliberately indifferent to Plaintiff's neuroma-related complaints. There is no evidence that Ricotta was personally responsible for Plaintiff's medical care after December 2015. Instead, the evidence shows only that Ricotta reviewed and co-signed notes of other medical providers, including—as relevant here—FNP Briggs' March 15, 2016 note regarding Plaintiff's complaints that his new orthotics were putting pressure on the nerves in his legs and causing inflammation, but not pain. (Doc. 32 ¶ 35.) Ricotta responded by submitting a consult referral to the Utilization Review Committee, and he approved the referral less than three weeks later. (Doc. 32 ¶ 36.) Although Plaintiff alleges in conclusory fashion that Ricotta "refused to refer [Plaintiff] to orthopedic specialist" (Doc. 1 at 13), he does not provide any facts to support this assertion, and the undisputed evidence does not support his claim. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment"); *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) ("a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact").

There is also no evidence Ricotta was responsible for or even aware of the two-month, 10-day delay between his April 5, 2016 consult approval and when Plaintiff was seen by an orthopedist on June 15, 2016, or that, even if he was, he knew or had reason to believe this delay would be harmful and that Plaintiff required more immediate care. Similarly, although Plaintiff alleges that Ricotta failed to approve orthotics for 86 days after Plaintiff was seen by an outside specialist (Doc. 1 at 13), the evidence does not support this assertion. The undisputed evidence shows that Ricotta reviewed and approved an August 22, 2016 consult request for Plaintiff to receive a final fitting within three weeks of the request, after which scheduling was again performed by an outside contractor. (*Id.* ¶ 39.) Finally, there is no evidence Ricotta was further involved in Plaintiff's care or was aware of any issues in his receiving orthotics until he became aware, on October 24, 2016, that Plaintiff was to be transferred, at which time he issued a medical hold for Plaintiff to remain at FCI Tucson until Plaintiff's final fitting took place. (*Id.* ¶ 40.) Nor is there any evidence that Ricotta was responsible for the hold being denied.

In summary, although it is undisputed that Plaintiff never received custom orthotics for his neuroma-related complaints while at FCI Phoenix, the evidence does not show, and Plaintiff fails to create a triable question of fact, that Ricotta was both aware of and deliberately indifferent to Plaintiff's serious medical need for new orthotics or was responsible for any delays in Plaintiff receiving this treatment. Plaintiff's claim in Count One against Ricotta fails as a matter of law, and the Court will grant summary judgment to Defendants.

### 2. Defendant Connors

Defendants argue that Plaintiff's deliberate indifference claims against Connors fail as a matter of law because Connors' only involvement in Plaintiff's medical care was to respond to his Administrative Remedy Appeals, which is insufficient personal participation to support a constitutional claim. (Doc. 31 at 14.) Defendants rely on *Shehee v. Luttrell*, 199 F. 3d 295, 300 (6th Cir. 1999), for the proposition that, where a defendant's only

involvement in a constitutional deprivation is to deny an administrative grievance, failure to provide a remedy does not constitute a constitutional violation. (*Id.*)

Defendants' reliance on *Shehee* is misplaced. Under Ninth Circuit law, a defendant can be held liable for failure to act. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). As such, a prison administrator shows deliberate indifference to a prisoner's medical needs if he "knowingly fail[s] to respond to an inmate's requests for help." *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014). When responding to medical grievances, non-medical administrators may rely on, and are not required to second-guess, the judgments of qualified medical professionals. (*Id.*) But if prison officials "choos[e] to rely upon a medical opinion which a reasonable person would likely determine to be inferior," their actions may amount to "the denial of medical treatment[] and the 'unnecessary and wanton infliction of pain.'" *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992) *overruled in part on other grounds as recognized in Snow*, 681 F.3d at 986.

With respect to Connor's September 13, 2016 denial of Plaintiff's Administrative Remedy Appeal, the evidence shows that Connors reviewed the documentation and found that Plaintiff had already been evaluated by an outside orthotic specialist who recommended orthotics on June 15, 2016, and Plaintiff was to be scheduled for a final fitting in the near future. (Doc. 32 ¶ 49.) Connors denial took place only five days after Ricotta had approved Plaintiff for a final orthotic fitting on September 8, 2016. (*Id.* ¶ 39.) Under these circumstances, Connors could have reasonably relied on such documentation to determine that no further action was required to address Plaintiff's need for orthotics, and it was not deliberately indifferent for him to deny Plaintiff's Appeal. In his Complaint, Plaintiff merely alleges in conclusory fashion that Connors "ignored the issues" (Doc. 1 at 13), but he does not raise any genuine issues of material fact that Connors reliance on Plaintiff's orthotics appointment and upcoming final fitting to address his need for orthotics was deliberately indifferent. Accordingly, Plaintiff's deliberate indifference claim in Count One against Connors fails as a matter of law, and the Court will grant summary judgment to Defendants.

## B. Count Two

Defendants do not dispute that Plaintiff had reflux esophagitis as alleged in Count Two. Nor do they dispute that this was a serious medical need. The Court therefore will address only whether Defendants were deliberately indifferent to this need.

### 1. Defendant Ricotta

The undisputed evidence is sufficient to show that Ricotta was not deliberately indifferent during his sole medical encounter with Plaintiff on November 19, 2015. First, the evidence shows only that Plaintiff informed Ricotta he was taking Omeprazole for acid reflux and he had previously been enrolled in the GI CC. (Doc. 1 at 7, 16; Doc. 32 ¶ 7.) There is no evidence Plaintiff complained to Ricotta of any symptoms that were not adequately controlled through Omeprazole. There is also no evidence he reported having any documented medical issues—such as H. Pylori stomach infection, a history of gastric bypass surgery, or bleeding ulcers—or that he had any objective signs of reflux esophagitis that would have called for his participation in the GI CC clinic. (Doc. 32 ¶ 11.) Under these facts, it was not deliberately indifferent for Ricotta to give Plaintiff a 30-day supply of Omeprazole and to inform him he could purchase more Omeprazole at the commissary or, if indigent, receive it free of charge at the pharmacy. There is also no evidence that Ricotta ever saw Plaintiff after this visit or was otherwise made aware of any worsening of Plaintiff's condition that required new medications, enrollment in the GI CC clinic, or other specialized care.

The allegations in Plaintiff's Complaint do not create a genuine issue of material fact that Ricotta knew of and deliberately disregarded any serious medical needs related to Plaintiff's reflux esophagitis. Plaintiff only specifically alleges that, during his November 19, 2015 evaluation, Ricotta did not examine him for the GI CC and refused to review his records. (Doc. 1 at 16, 18.) While unprofessional and possibly negligent, Ricotta's failure to conduct an examination or review of Plaintiff's medical records for GI CC purposes does not rise to the level of deliberate indifference where it is undisputed that Ricotta otherwise addressed Plaintiff's reflux esophagitis complaints by providing a 30-

days' supply of Omeprazole and then had no further direct involvement in Plaintiff's medical care. *See Wood v. Housewright*, 900 F.2d 1332 (9th Cir. 1990) ("[i]n determining deliberate indifference, we scrutinize the particular facts and look for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect").

Because the evidence shows that Ricotta was not deliberately indifferent to Plaintiff's reflux esophagitis, and Plaintiff's allegations in the Complaint fail to create a genuine issue of material fact as to this showing, Plaintiff's deliberate indifference claim in Count Two against Ricotta fails as a matter of law. The Court will grant summary judgment to Defendants on this claim.

### 2. Connors

As with Count One, Plaintiff's claim against Connors in Count Two is based solely on Connors' denial of Plaintiff's Administrative Remedy Appeal. Plaintiff first appealed the denial of his January 19, 2016 BP-8 Administrative Remedy related to his request for prescribed medications and enrollment in the GI CC. (*See* Doc. 1 at 16.) Dismissed defendant Asberry had denied Plaintiff's initial BP-8 on the grounds that "acid reflux as the lone diagnosis does not meet the criteria for a GI CC" and there were no objective findings that Plaintiff needed GI medications. (*Id.*) Dismissed defendants Tracy and Mitchell subsequently denied and upheld the denial of Plaintiff's Administrative Remedy and initial Administrative Remedy Appeal based on their review of Plaintiff's medical records and the lack of relevant diagnoses indicating that additional medications or enrollment in the GI CC were clinically indicated. (*Id.* at 17.) Connors likewise denied Plaintiff's final Administrative Remedy Appeal based on his review of the documentation and the lack of medical records showing Plaintiff had a need for GI CC care. (Doc. 32 ¶ 48; Doc. 32, Ex. C (Connors Decl.) ¶ 6.)

On this record, Connors could have reasonably relied on Plaintiff's medical records and was not required to second-guess the opinions of Plaintiff's medical providers. *Peralta*, 744 F.3d 1076, 1086 (9th Cir. 2014). The undisputed evidence therefore shows

that Connors was not deliberately indifferent to Plaintiff's serious medical needs related to his reflux esophagitis.

Plaintiff additionally alleges that he complained in his Administrative Remedy Appeal that medical staff failed to document his worsening condition "during sick call procedures." (Doc. 1 at 17−18.) Absent any specific facts about what his sick call providers failed to document, however, this bare assertion does not create a triable issue of fact that Connors had reason to distrust the opinions and documentation of Plaintiff's medical providers. *See Hamilton*, 981 F.2d at 1067. Plaintiff also alleges that he attached medical records from 2012, showing he had previously been diagnosed with reflux esophagitis, which he claims clearly showed he met the diagnostic criteria for enrollment in the GI CC. (*Id.*) This fact also does not create a genuine issue of material fact that the findings of Plaintiff's providers in 2015 and 2016 were unwarranted. Moreover, even if, as Plaintiff alleges, FCI Phoenix medical staff failed to consider Plaintiff's prior diagnosis when they determined he was ineligible for the GI CC or GI medication three to four years later, this does not show that Connors' reliance on the opinions of Plaintiff's direct medical providers was unreasonable or that Connors' denial of Plaintiff's Appeal was deliberately indifferent to Plaintiff's serious medical needs.

Because the evidence shows that Connors reasonably relied on his review of Plaintiff's medical records to deny Plaintiff's Administrative Remedy Appeal regarding enrollment in the GI CC, and Plaintiff fails to create a genuine issue of material fact that such reliance was unreasonable, Plaintiff's deliberate indifference claim in Count Two against Connors fails as a matter of law. The Court will grant summary judgment to Defendants on this claim.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants Ricotta and Connors' Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment (Doc. 31).

(2)   Defendants' Motion for Summary Judgment (Doc. 31) is **granted**, and this action is **dismissed**.

(3)   Defendants' Motion to Dismiss (Doc. 31) is **denied as moot**.

(4)   The action is **terminated with prejudice**.  The Clerk of Court should enter judgment accordingly.

Dated this 21st day of February, 2020.

_David G. Campbell_

David G. Campbell
Senior United States District Judge